Case number 20-1370. Advocates for Highway and Auto Safety et al. Petitioners versus Federal Water Area Safety Administration et al. Ms. Rosenbaum for the petitioners, Mr. Springer for the respondents, Mr. Cowan for the intervener. Good morning and Advocates for Highway and Auto Safety Council for Petitioners may proceed. Thank you. May it please the Court, on behalf of petitioners. The hours of service rules governing the amount commercial motor vehicle drivers may work affect safety on America's roads and the health of the drivers. In the final rule at issue in this case, the Federal Motor Carrier Safety Administration changed those rules in two important ways. It expanded the permissible work days and driving radius of certain short haul drivers. So those are drivers that are exempt from having to log their driving time because they stay within a certain circumscribed area and return to their work location and are freed from work within a certain set time. And it eliminated the requirement that long haul workers take a 30-minute off-duty break if they have not taken such a break in the previous eight hours of working and replaced it instead with a requirement that they take only a 30-minute break from driving if they have not taken such a break from driving in the previous eight hours of driving. Neither of these sets of changes were the result of recent decision making. The agency stated that it did not expect the final rule to have negative impacts on either safety or driver health, but did not provide reasoned explanations of those conclusions in light of the evidence before the agency in the administrative record. Starting with the short haul exemption, a 2011 study sponsored by the FMCSA, the Blanco study, found that driving later in the workday has a negative safety effect. By expanding short haul drivers work days from 12 to 14 hours, the final rule allows driving later in the workday and would therefore also be expected to logically to negatively impact safety. It also conforms the rule for short haul truck drivers to the rules that had always, as I understand it, had always been in place for the long haul drivers, the 11-14 limits, and also the rules that had governed short and long haul cement mixers, mixer drivers. Isn't that at least a pretty significant fact in framing whether this kind of change is likely to be dangerous? Well, it does make the short haul work days the same as the driving window for long haul drivers, but absent evidence in the record that the long haul drivers drive just as safely with a 14-hour driving window as they would with a 12-hour driving window, that doesn't indicate that expanding short haul drivers work days will not affect safety. And there isn't evidence of that in the record about whether long haul drivers drive just as safely with 14 hours as they would with 12 hours. And in fact, the Blanco study indicates just the opposite. It found that when drivers drove further into their 14-hour workday, that there was a negative safety implication from that. With regard to the concrete mixers, the ready mix concrete mixers, the agency did do some analyses of crashes involving those concrete mixers in the two years before and after Congress extended their work days, the work days of short haul concrete mixers. As commenters noted, there were many limitations with the analyses. One is that it didn't just look at short haul concrete mixers. So it wasn't just a study of the drivers whose work days were extended in 2015. You have Blanco and you have Teo. They have concrete mixer. None of them is perfect, but the agency is picking among different studies that are cutting in opposite directions. It's a pretty granular level for us to come in and second guess them. Well, even when there are different studies, the agency has to provide a reasoned explanation for reaching the conclusion that it does and for relying on one set of studies as opposed to the other and for why it didn't think that the studies showing a negative impact on safety were worth relying on. And here what the agency stated despite the Blanco study and the Teo study was that it had no reason to think that the changes to the short haul exemption would have a negative impact on safety, which is not reasoned. Although there are these concrete mixer analyses, it does not justify the agency statement that there's no reason to think that there would be a negative effect on safety given the Blanco study and the Teo study. I would note that the concrete mixer analyses also commenters had noted that there are reasons to think that concrete mixers would not be similar to other short haul drivers, that they may drive more slowly or spend more time on highways. And what the concrete mixer analyses actually showed was that crashes of ready mix concrete mixers increased 8.5% in the two years after Congress extended short haul concrete mixers work days as opposed to the two years beforehand. The agency nonetheless relies on those analyses by saying that concrete mixers share of total crashes did not increase in a statistically significant manner during that time, but doesn't provide the information that would allow anyone to know whether the share of concrete mixers, the percentage of concrete mixers themselves involved in accidents increased in a statistically significant way over that period. And whether that 8.5% increase was statistically significant when considered as a share of all ready mix concrete vehicles as opposed to as a share of all truck crashes. Related to safety, the agency also did not reasonably explain its conclusion that expanding the short haul drivers work days and driving radius would not affect compliance with the hours of service rules. The hours of service rules in addition to setting limits on work days. How does the radius, put aside the hours right now, how does the radius affect compliance? It affects compliance by working in conjunction with the extension in the work day in that it allows drivers. No, but you don't have any independent, you're joining it up with the hours extension. I'm asking if you have any independent basis for thinking that just as the radius, I'm trying to divide these two things up, that itself has an impact on compliance. Well, the way that it would have an impact on compliance is that it allows drivers to drive longer distances without stopping. So, how do we know it's without stopping? How do we know that they're not stopping just as they do in shorter distances because they're short haul and maybe they're just able to reach a few more customers? We don't know that they're only going to one more customer in that additional radius area. Well, when the Federal Highway Administration adopted, in 1980, the Federal Highway Administration extended the short haul workers work days, or sorry, the driving radius from 50 to 100 hours. And when it did that, it adopted the 12-hour limitation saying that in light of the larger area, it thought that the larger, that the limitation on hours was necessary to ensure that the hours of service are not violated. So, we're talking about a limitation on hours there, and I'm still trying to talk. I don't understand how the radius, how I don't, because I don't understand your concerns about the increase in radius. It just may deal with placements and routes that, you know, allow companies to reorganize or, in their view, I assume, more efficiently organize routes to meet a greater area, but I just don't see compliance or honestly even safety concerns about the radius itself. Sure, with the radius going, allowing them to go further does allow them to go more without stops, and it may be that some of them still do it. And I don't, how do you know they're going more without stops as opposed to they've got, you know, wow, great, I can meet this other circle of 10 miles or 15 miles. There's two more customers, I'll stop every 15 miles. So, they may do that, or they may decide that they're going to go further, you know, have the same number of stops. Right, but that's the point, we don't know. Well, have the same number, and the agency at one point says that. They could do that within the shorter radius as well, just depends on how companies organize their routes, doesn't it? Right, but they can now organize their routes so that they go farther out and have less distance between stops, which would then allow. It's that second part, I'm sorry, I'm repeating myself. I get that they can go further out, I just don't know what evidence in the record is there that when you go further out, there will necessarily be less distance between stops as opposed to, maybe it'll be roughly the same because they've got more customers out there. Right, so it's not necessarily, we're not saying then every instance they will have fewer stops. Most instances, do you have evidence of most instances? It does allow them to go further. You could have said the same thing from 50 to 100, but. And the agency did recognize with the change from 50 to 100 that because it did allow them to go further, that there then needed to be other limitations to keep them, you know, that effective compliance with the hours. That's where we're back to the hours issue, but. Well, they do work hand in hand, so it realized that without limiting hours, that the extension in the air mile radius would allow more violations. Would your challenge to the hours change be any different if they had left the travel radius the same? We would still have a challenge to the hours if they had left. Would that change in any way? I think I seem to be making the same arguments. I do think that the change in the air mile radius exacerbates the change in the hours because it does allow them to go a greater distance without stopping if they want to, although they won't do it in every time. And the final rule at one point does acknowledge that they could potentially go further with making fewer stops or that the change in the hours would also allow them to make more stops within a smaller radius. But in 1980, the Federal Highway Administration did acknowledge when it expanded the air mile radius from 50 to 100 miles, that a limitation on the hours was necessary in order to help ensure that the hours of service were not violated. And then again, in 1987, it reiterated that it thought that 12 hour limitation was necessary to ensure that drivers were not violating the hours of service without detection. The agency has not explained why if the 12 hour limitation was necessary with a 100 air mile radius, why it would not be necessary with 150 air mile radius, or in any other way explain what has changed since 1980 and 1987 that makes the rationale that underlay the prior rule no longer still apply today. If you prevail, this is just a if question, on your hours challenge, and they were to be vacated, would the radius requirement have to be vacated? I do think that these were changes that were enacted together and go together, and the agency did not really separate. Lots of things are enacted together, but we don't think they have to get vacated. I'm not sure that's our test. I do think it would be simpler if it were. I do think that they were sort of part and parcel of the same change. I don't know what you mean by part and parcel. That's another way of saying they did them at the same time. The agency can tell us their views on this as well, but given that the arguments seem to keep coming back to the hours limitations, and that's what's needed to ensure for your compliance argument, that if they had kept the same hours requirement but just increased driving radius, I don't know what your objection would be because you would still have the 12-hour, which you say is the backstop needed for compliance. Right. I do think that that would still have the possibility to affect compliance the same way that a change from 50 to 100 air miles, the agency recognized that that could. Yes, and it said the backstop for that was 12 miles, and if you had your druthers, then there was the 12 miles, 12 hours, sorry, 12-hour requirement. If that were to stay in place, you say that protection wouldn't work if the radius were increased? What evidence in the record shows did the agency not grapple with or what rationale is given that if the 12-hour limitation were maintained, it wouldn't work once you go from 100 to 150 on the travel radius? We do think that the same way that switching from 50 to 100 has a possibility to affect compliance. So you're just saying any change can increase, creates enough a compliance problem. I do think that it does present a compliance problem, but the extension of the 12 hours to 14 hours certainly gives many more opportunities not to comply for drivers to be able to violate the hours of service limits or to be pressured by employers to violate the hours of service limits without detection, and the agency hasn't explained why the rationale underlying that 12-hour limitation no longer applies. I do want to briefly touch on the 30-minute break requirement, and in particular, the agency is required to consider health when it's making changes to the hours of service rules, and here there is no indication or analysis of the effects of the 30-minute break requirement on driver health. The agency only broadly talks about how it does not changes overall negatively impact health with no analysis specifically of the 30-minute break requirement, and this is particularly problematic given that the rule that adopted the 30-minute break requirement in 2011 did find that there would be health benefits of 94 million dollars to the 30-minute break requirement that were based on a connection between reduced duty hours and morbidity, so would seem to be affected by these changes in the final rule. So what's the concern other than impact on crash likelihood? So the health concern would be a health concern about working 14-hour days is stressful. I assume it would be the particular health risk associated with sitting and driving for 14 hours. Well, health risk, I mean, the drivers have distinct, there's not distinct health risk, but higher percentages of certain diseases, at least this is what the record said, and if they already have that without the 30-minute break, would it not be worse? So I think it would be that the health risk of both working, of sitting for so long and having these long days combined with not having the right to an off-duty downtime, but the agency did not analyze the break at all, or there's no indication that it analyzed the effect of the break on health impacts. The break, or breaks, the concern is you're sitting, you could be sitting for eight hours in a row and that has cardiovascular effects or whatever, the break, that's a concern from sitting too long and not from working too long, right? And the amended rule addresses that because it's key to hours of driving. So the amended rule does address sort of sitting continuously, but the health benefits in the 2011 regulatory impact analysis were actually based on increases in duty hours overall and connections between increased working time and morbidity. Increase, I'm just trying to separate out, the idea that I had in my mind was long work day, and the different idea that Judge Millett pointed out was the concern from sitting too long. Those seem to me different. So I think those are slightly different. The new rule may somewhat deal with the sitting too long. The new rule does deal with the sitting too long, I think. In some ways, although it also does only require the break to be taken after eight hours of driving as opposed to eight hours of working. So if someone has done work earlier on in their duty period, that would still allow them to be sitting longer before they take the break. What's the typical non-driving work? Is it likely to be sedentary sitting at a desk filling out forms or is it likely to be active loading the truck or whatever? I think both can be done. There can be loading time, there can be time just sort of sitting around waiting, there could be time doing paperwork. So I think both are possibilities. I see that my time is up, so thank you. Good morning, Your Honors, and may it please the Court. Brian Springer on behalf of the Federal I'd like to start by focusing on the specific changes that FMCSA made to the hours of service rules. The short haul exception does not extend driving time, but instead changes the reporting status of drivers who travel between 100 and 150 miles of their reporting location, who return to that location between 12 hours and 14 hours from the start of their shift. The 30-minute break requirement also does not change the driving limit, but instead requires that long-haul drivers take a 30-minute driving break after eight hours of driving. These changes are reasonably explained and supported. Nothing more is required to uphold the agency's considered judgment. I guess I'd just like to... You want me to go backwards, but on the 30-minute break issue, someone's day is sort of front-loaded with non-driving activities for six hours, and then they drive eight hours, and that's the end of the 14-hour day. There will be zero break within 14 hours. Is that right? Your Honor, the agency... That's right, right? There'll be zero break, I guess you would call the first six hours of non-driving work a break. Your Honor, the rule wouldn't require a break in that circumstance, but the agency found that drivers are likely to take breaks when they need rest anyway. Drivers are often stopping to eat food and use the bathroom, and that when they need time to rest and to take a break, that they will do so in any event. So the rule just doesn't... Self-regulation is what the agency is now relying on. Your Honor, the agency also considered... Did the agency find that they don't eat while driving? Maybe they grab their food, but I mean, it just... Your Honor, the agency... It seems odd to me to say they can work an 18-hour day straight through and have... I'm sorry, not 18, 14-hour day straight through with no downtime break, solid work for 14 hours, and maybe they run in and out of that restroom, and that's it. And that is what seemed to be consistent with making safety a highest priority? Your Honor, so the agency considered the Blanco study here and found that what the Blanco study explained is that any break from the driving task is what creates a benefit to the driver. So the agency explained that, you know, looking at specifically the fact that drivers might stop for fuel or stand around while their truck is being loaded or unloaded, and that those breaks from the driving task are exactly what provides the safety benefit. Though none of those are required. You're just hoping that they happen. You're expecting that they'll happen. It's more than hoping, to be fair. Well, Your Honor, they... They're not required. They do have to happen if the driver has driven for eight hours or more. No, but under my theory, where the six hours is work... The on-duty work six hours is up front, and then there's eight hours of driving at the end of the day, which is the worst time studies have revealed for driving concerns and risks. Later in the shift, later in the day, the higher the risk goes. But that eight hours would be without anything unless probably they have to stop for gas. Maybe they grab some food to eat while driving. And that was found to be consistent with making safety a highest priority. Al? Your Honor, I think that what the agency said here was that based on the comments it received, that sort of situation wouldn't happen often. It wasn't realistic because drivers will take breaks regardless of whether they're mandated to take an... How long are those breaks? What did the agency find? How long does a gas break take? And the gassing up, presumably, maybe the bathroom, that one happens at the same time. Maybe food. Maybe they do it all at once. How long a break are those things? Put aside the on-duty, non-driving, breaks in driving by on-duty work. Did the agency find how long those are? Your Honor, the agency couldn't make that finding because it varies from circumstance to circumstance and depends on exactly... Doesn't that matter a lot though? It doesn't have to find precisely. Everybody does exactly 10.3 minutes. But isn't there some need for some substantiation that this is actually a meaningful period? Because just saying they're not driving without knowing for how long they're not driving, and particularly if you're talking about late in the shift, why doesn't the agency need to have something under a statute that says make safety your people take time to get gas, go to the bathroom, and grab some food? Your Honor, I don't think it's just those anecdotal pieces of evidence. It's also the Blanco study, which as I mentioned, the agency considered and explained that what the Blanco study says, as well as multiple other studies describing the Blanco study and its findings. But what those say is that what provides the benefit and combats the effects of fatigue at end of the day, which is what we're really concerned about here, is the break from the driving task, which under this rule, drivers are required... But didn't the studies also say that as they get later into the shift, risks increase? Your Honor, it does say that, but... And if you had eight hours straight of driving? Again, Your Honor, the agency explained that just was not know that I'm running to the bathroom and grabbing a sandwich while my truck is gassing up, and then I'm right back in there because deadlines are deadlines. Doesn't the agency need to focus on... You can say they're going to do that, but whether that is physically and mentally a meaningful break? Your Honor, I think that the agency has that support from the studies that it cited, including the Blanco study and I believe it's called the Socolish study, among others, that this is the way... And when you combine that with this anecdotal evidence... But they had done that. Those studies, I assume, were done at a time when they were also getting a 30-minute break after eight hours of work, whether it was driving or non-driving. Were all those studies and experiences occurring at a time when they were already under the prior rule the 30-minute break from work? Your Honor, the Blanco study was done before the 2011 rule, and the Blanco study specifically talks about non-driving versus driving breaks and says that a non-driving break can provide... At least the agency explained that its analysis of Blanco is that that study says... Did Blanco say that? Yes, Your Honor, it did. Okay, because you quickly corrected to the agency says that's what Blanco said. Blanco said that. Well, obviously, we should be focusing on the agency's analysis of Blanco, but that's also explicit in Blanco itself. For example, at JA-25, it says that non-driving breaks are just as beneficial or can be just as beneficial as these off-duty breaks. Well, in 2011, the agency found that off-duty breaks provide the greatest benefit. You don't disagree with that? Your Honor, it... Which is very different from their... It's just the same to have an on-duty break. It sounds inconsistent. Your Honor, the agency made that finding based on the Blanco study, which should reanalyze in issuing this rule and determine that it had placed too great a weight on the benefits of off-duty breaks and looking at Blanco again and particularly analyzing it in the context of the particular... It was wrong when it said in 2011 that off-duty breaks provide the greatest benefit. That was wrong. Your Honor, the agency has decided that it reads the Blanco study differently now that it... So it was wrong. It read it wrong in 2011? Your Honor, based on the experience that it's had in between, it has changed its analysis of what... Of the study? The study... I don't... You can say they're relying on experience, but they read the study one way in 2011 and now they're reading it a different way. So one of the two has to be wrong. Your Honor, they're reading it in a different way... Or else your study isn't worth much if you can't really tell that much from it. Your Honor, the agency's reading it differently in part because of the way that Blanco characterized what counts as an off-duty versus on-duty break. So the agency was actually looking at, in the real world, how these things work and which classification those things would fall under based on the real hours of service rules. And based on those classifications, it determined that it had placed too great a weight on the benefits of an off-duty break when a driving break is really what provides the benefit. And there's a driving break of any length of time to be clear, right? Your Honor, it will... It's been driving for eight hours. Right. I've got my six-hour and eight-hour hypothetical. A break of any time is equivalent to a 30-minute off-duty break. That's the agency's conclusion here. Your Honor, again, in that circumstance, the agency said that drivers would likely take breaks... A break of any time. Those breaks that are not quantified on time. A break of any time. That's the agency's reading of the Blanco study, informed by its experience, that after working six hours in the office or loading or whatever they're doing, and then driving... They've got an eight solid hours of driving ahead of them. A break of any time. Yes. I mean, I think that's yes. That's got to be your answer. That's what the rule says. Your Honor, what the agency says is that Blanco shows that there's not... That this distinction that the agency itself had drawn between on-duty and off-duty breaks was not supported by Blanco, and instead that the on-duty break is really what provides the benefit to the drivers in terms of combating fatigue. Obviously, the agency didn't have perfect evidence, but it looked at what it had. It made judgment calls about the dueling studies and about the information that it received from commenters, reached a reasonable conclusion based on... Within the limits of the data that it had. There's something a little bit odd about the agency's justification in the following sense. I mean, it seems very obvious that at some point, drivers will need breaks, right? They drive for too long, so there starts to be a safety risk. And it seems pretty plausible to me anyway that you drive for eight hours in a row, you're getting past that point. And the agency doesn't really dispute that as a proposition of how human beings fatigue after driving for eight hours. They say, don't worry about that because no one's going to be driving for eight hours, right? That's the basic rationale, which is to say that the standard the agency has set has no meaningful impact because nobody drives for eight hours without a break of some kind. All right. I don't think that's exactly right in the sense that what this rule requires is that if somebody drives for eight hours without taking a 30-minute continuous break, that in that circumstance, they are required to. The agency obviously was allowed to consider and did consider here how this is likely to play out in the real world. And based on what the agency was seeing, it saw that in general, people are going... Drivers are going to take breaks when they need to take breaks and get rest, but that once they reach an eight hours of driving time, they should be taking a break from the driving task because that's what provides the actual benefit of combating fatigue in these drivers as they continue to sit and drive for a long time, that breaking up that time on task. Right. But they don't say as a general matter, perfectly safe, safe enough to drive for eight hours in a row with no break. And then that's the point at which safety kicks in. They say most people won't drive for eight hours. Right. I think they say that. And they also say that that's also the time within which they expect drivers to take a break in order to combat this fatigue. I mean, the rule before was just about... It was also an eight hour period. It was just an eight hour on duty period instead of an eight hour driving. No, I know. I'm focused on driving. I mean, you'd be making exactly the same argument if it were a 16 hour driving rule, right? You'd say, well, that's crazy. Don't worry about that because no one is going to be driving 16 hours in a row. No, no. I'm not sure if that's true because potentially in that circumstance, drivers wouldn't have supported the rule here. Multiple drivers came forward and supported the rule. This provides them greater flexibility and makes it easier for them to get home earlier and has multiple benefits for them. I suppose if it were a different calibration of the rule, it's possible drivers or employers would have come in and suggested that they were going to force their drivers to drive that many hours without a break. Here, we don't have that evidence. They're relying on the gas, food, and bathroom breaks. Is the agency assuming those were three separate breaks or done simultaneously? What was the evidence? I thought the ones that were referenced in the rule were restroom, gassing up, and grabbing food. There's multiple other breaks that the agency noted in addition to those. There's using the restroom, getting something to eat. The three you said in addition to those, there's also waiting for the truck to be loaded or unloaded. That goes to the driving on-duty time. I'm talking about my solid eight hours of driving. What is there other than the three I've mentioned? Your Honor, I suppose those are... Right now, I can't think of another thing that they're likely to... I'm not a driver, but I don't know either. Is the agency, when it says it'll be taking breaks plural, it's assuming that drivers aren't efficient with those three things at the same time? Is it assuming that those things are done simultaneously, so they're really in eight hours, it's probably just one break? Your Honor, I don't think the agency is assuming anything one way or another. Did it find anything about frequent... I was talking to you before about the time, how long this is, but did it make any finding at all about how frequent these, oh, they're not going to do it, breaks, they're not going to drive eight solid hours, breaks are going to happen? Any evidence on frequency? Your Honor, the agency didn't have specific evidence about that. It doesn't necessarily have the ability to get that kind of granular of information. Why? It's got truckers telling them what you just told us. It had truckers telling them how they work. I'm still struggling with understanding how the agency knew this was going to be enough of a break if it didn't know how long or even how often. But it concluded that this was consistent with highest safety. That's just laying out for you sort of the mental gap. I'm having trouble bridging here, but you may be able to explain it to me better. Your Honor, I think the important thing is that the agency made a judgment that after eight hours of driving, drivers need to take a 30-minute break from the driving task. The agency recognized that in addition, drivers would likely be taking these short breaks to go to the bathroom and to eat and to do these other things that, you know... So the agency agrees that eight solid hours, if they didn't do that, would not be safe. Your Honor, I... Its rule assumes that there's some break within that eight hours. Your Honor, I'm not sure that the rule assumes that. Again, it specifically said that this isn't likely to happen because drivers are taking a break, are often taking a break from the driving task as a matter of issue. My colleagues want to talk about that. I'm sorry I took up too much time. No, that's fine. Are we done on the break time? So on short haul, seems like the best, to me, the most plausible explanation for the expansion of the rule is to simply say, you're conforming the basic rules. Basic rule is you can drive 11 hours within a 14-hour shift. You're just conforming the rule for drivers subject to the short haul to drivers subject to the long haul and the cement mixers. And if that's the baseline, no reason to think it isn't working. So you're harmonizing this group to that rule. But you didn't quite say that. You said that the changes were safety neutral. Seems to make an assertion about ex-post versus ex-ante, that not about safety relative to other groups, but that the changes would make things no less safe for the short haul drivers. And that's a tougher position for you to establish factually. So am I misreading the agency's rationale? No, Your Honor. The agency did note that it was conforming the short haul exception to a short haul exception that existed for drivers who don't have to have consistent with the driving window for long haul drivers. But the agency, and again, of course, the agency didn't have perfect information here. And it used the available data that it had. I think one important piece of information that the agency had was this data about concrete mixers. And in particular, Congress extended their workday, at least those concrete mixers who the short haul exception, extended their workday from 12 to 14 hours. So the agency looked at the changes in crashes across the time that Congress made that change. What the agency saw is that particularly at the end of the day, when we would expect these drivers to be reaching the end of their shifts and most likely to have accumulated large levels of fatigue. I understand you have both strands of reasoning, but in order to uphold this rule, do we, would we have to conclude that there is substantial evidence for the proposition that the amended rule is no less safe for the short haul drivers than the pre-amendment rule? Your Honor, the agency's final conclusion was this change to the short haul exception was not likely to have an adverse safety impact. But is that essential? Is that an essential element for us to uphold? Your Honor, I think that's, that was the agency's rationale, but it had multiple pieces of evidence here to support. But its conclusion was that these changes were not likely to have an adverse safety impact. If you're resting on that theory, you didn't even, you didn't talk about Blanco on this point. Seems like a pretty glaring omission. If your theory is this, this makes things no less safe. Agency's own study, it's only one and they're competing studies, but it's the agency's own study. It's a study that you relied on very heavily on the break point and you don't even mention it on this question. Why isn't that arbitrary? Your Honor, the agency did discuss Blanco within the context of the short haul exception and it noted specifically that what Blanco shows is that taking breaks are helpful to combat fatigue at the end of the day. The agency explained that short haul drivers, short haul operations by their nature are limited because the short haul drivers are making frequent stops throughout the day. They're getting out to drop off cargo, to talk to customers. That's sort of the nature of the 30-minute break point, but not the short haul point. Did I miss something? Your Honor, the agency relied on it for both. The agency in particular noted that its discussion in the 30-minute break piece applied to its discussion of the short haul exception. Did the agency find with its concrete study that kind of loading and unloading responsibility, sort of the physical tasks of loading and unloading that any other short haul drivers do? Your Honor, my understanding is that the concrete mixers make multiple stops throughout the day and usually are standing around while the concrete is being unloaded. There's obviously not loading or unloading. There's not boxes or anything to load or unload, so that physical exertion is not the same as many other short haul drivers. When they say they make frequent stops, what I'm asking is sort of an equivalence. Are they representative of short haul drivers? Do they find that they're representative of short haul drivers? I could be wrong, but I think of like an Amazon driver or a UPS driver. They're just stopping all the time. I guess I would have thought concrete ones would go to a construction site and stay there for a while and maybe later go to another construction site. Your Honor, the agency noted that the concrete mixer data wasn't perfectly representative of all short haul operations. But it found it to be representative? It did find it to be helpful here. Wait, can it be helpful if it's not representative? Your Honor... You said not perfectly representative. Did they find that it was representative? Your Honor, they found that this evidence was helpful to think about what the likely... How is it helpful if it's not representative? Your Honor, all they said was that it wasn't perfectly representative. They didn't say that it didn't have any probative value. They didn't say that it did, that it was representative. Isn't that a problem? Your Honor... There are lots of things that aren't perfectly representative that in fact are not representative at all. Didn't they need to find, or tell me why they didn't need to find that it was representative as to these things, as to the activities the short haul drivers engage in, the physicality of their activities during stops, and the number of stops per day? Did they... Which seems to be sort of the critical ones for... Maybe there's another one you're aware of, but those seem to be sort of the critical ones for understanding the physical impact of the day. Your Honor, the agency was considering the concrete mixer data within thinking about what the fatigue effects would be of this rule. And the agency explained that this was the best available data because it was nationwide, and it showed how... It allowed the agency to do a before and after comparison. If it's not representative, how can it be... I mean, best available could be still entirely non-representative. It just could be best available, but not good enough. It doesn't seem to me it's enough to say this is the only study we are representative enough. That it allows us for safety purposes to make this, that it involves closely equivalent exertion nature of on-duty non-driving activities. Don't they need to do that? Or can they just say it's the only study we could find that's relevant at all, but it's only one we have. It's not perfect, but we're going to rely on it. Your Honor, the concrete mixer data was also consistent with the agency's analysis of the Blanco study, which suggested that taking these breaks throughout the day was likely to combat fatigue at the end of the day. And therefore, the agency considered all of these pieces of evidence together. Did Blanco say it doesn't matter how much exertion is involved during those days? Your Honor... For a study to... For a non... Still working, but non-driving break, does the amount of exertion, the amount of physical exertion involved matter? Your Honor, so the agency explained that Blanco says that taking a break from the driving task is what's producing this. But what kind of breaks was Blanco thinking about? Your Honor, the Blanco involves a number of different types of breaks, some that include rest with work and some that just include on-duty work, some that are off-duty. What kinds of on-duty work? I don't remember the specifics, Your Honor, but it's similar to what the agency is discussing here. And looking at Blanco, the agency looking at Blanco in conjunction with the consistent concrete mixer data, which allowed this before and after comparison, the agency exercised its discretion in weighing the evidence here to reach its conclusion. Your Honors, if there are no further questions, we would ask that this Court deny the position for review. Thank you. Paul D. Cullen, Jr. It pleases the Court. My name is Paul D. Cullen, Jr., and I represent the Owner-Operator Independent Drivers Association. This is a trade association of 150,000 small business truckers from across the country. In my limited time, I'd like to focus on the 30-minute rest break rule that's of particular interest to members who are mostly long-haul drivers. FMCSA's rule was more than rationally based to deal with two negative safety consequences of the prior rule that was described in OIDA's comments and its studies and the testimony of its drivers of the listening sessions that FMCSA held during the rule-make. Those two negative consequences are, one, drivers are being forced to stop in unsafe locations to comply with the rule, and the second was the rule extended the workday, causing more stress and pressure to complete their work in the resulting shorter time later in the day. Now, why are drivers parking in unsafe places? There's a major problem with truck parking across the country. Although it's a 30-minute rule, it can take up to an hour or more to find a place to park, and therefore, it becomes a 60- or 90-minute break out of their day. But if they're unable to find truck parking, which is a frequent occurrence, then they will stop on the side of the road or on an exit ramp in order to not violate the rule, not be moving and violate the rest break provision. And taking 30, 60, 90 minutes out of a driver's schedule pressures them and adds to their stress to work in the remaining part of the 14-hour day, pushing their work later in the day. And the drivers have been observed speeding, driving unsafely, driving in rush-hour traffic or conditions they would otherwise choose to wait out because their workday has been made shorter and they have to accomplish the same amount of work. The rule often requires, in that first eight hours, drivers to stop when they're not tired. And because they stop when they're not tired and it takes that 60 or 90 minutes out of their schedule, then they have less discretion to stop later in time when they are tired. And this new rule is a little less one-size-fits-all than the old rule, giving the driver the flexibility to make decisions to work when they can and rest when they need to. These were the truckers who kept the engine of our economy going for the last two years, and the rule recognizes the role of drivers to make decisions to operate more safely on the road. Is it really a question of flexibility, as opposed to a question of what is the more important safety trigger, the time driving or the time working? It's an eight-hour rule either way. The time off from driving. So if a driver stops and can comply with the rule, as your honor described, maybe they go to the restroom or get something to eat, they can extend or other activities include tying down, making sure the load is tied down properly. The drivers who use such equipment have to do that every two hours. They may be filling out paperwork. All right, some people have to stop every two hours to check how loads are tied down. Is that what you just said? Correct. So they have to hunt for places to pull over and do that too. Sounds like knowing where to pull over is part of the job, huh? I'm sorry? Sounds like knowing where to pull over in advance is probably part of the job. Well, it certainly is, but there are many instances where drivers are sent where they've never been before, and there are many places where parking is at a great shortage. So even if you know, okay, I know there's a truck stop down the road. Well, if it's full, then you're driving on longer period of time to find a place to park, try to find a safe place. The negative consequences reported into the record by the client and its members are more absolutely justified in our rational basis to support the flexibility. Thank you. Thank you, your honor. Thank you. Just a few quick points on the concrete mixer analysis. What the agency said about the concrete mixers is that FMCSA did not claim that the analysis is definitive or that the population of concrete mixers is representative of all short haul operations. That's on Joint Appendix 268. And to the extent that the analysis of the changes in the short haul exemption did mention the break aspect of the Blanco study, that was in discussing the 30 minute break requirement. So in addition to being exempt from logging their duty status, short haul drivers do not need to take the 30 minute break. And there was a discussion in the discussion of the short haul exemption about the fact that now drivers who drive between 12 and 14 hours or the longer radius will not need to take the 30 minute break. So in that context of discussing the 30 minute break and how the 30 minute break interacted with the changes to the short haul exemption, the agency did talk about the break part of the Blanco study. But just in justifying whether extending the workday of short haul drivers would have an effect on safety due to driving later in the workday, it did not justify that extension based on breaks. Finally, on the point on breaks, the agency did note that breaks, sorry, on the 30 minute break requirement, the agency in stating that it thought that drivers would continue to take breaks did state that those breaks may be involved non-driving work. And it also stated that it did not think that drivers who drove less than eight hours would amass fatigue. So it was not depending on those drivers taking breaks. It just did not seem to consider that there was a fatigue element to driving up to eight hours. And unless there's any further questions, we would ask you to vacate the short haul exemption and 30 minute break requirement changes in the final rule. Thank you. So we will take that petition by petitioners under review and move on to the next case.
judges: Rogers, Millett, Katsas